Electronically Filed
Intermediate Court of Appeals
CAAP-13-0001963
31-JUL-2014
08:00 AM

NO. CAAP-13-0001963

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
TITTLEMAN FAUATEA, Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 09-1-0300)


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Appellant Tittleman Fauatea (Fauatea) appeals from a Judgment of Conviction and Sentence (Judgment) filed on June 26, 2013, in the Circuit Court of the First Circuit (circuit court).[1] Judgment was entered against Fauatea for Murder in the Second Degree in violation of Hawaii Revised Statutes (HRS) §§ 707-701.5 (1993)[2] and 706-656 (1993 & 2013 Supp.).[3] This case

---

[1] The Honorable Rom A. Trader presided.

[2] HRS § 707-701.5 provides:

[§707-701.5] **Murder in the second degree.** (1) Except as provided in section 707-701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.

(2) Murder in the second degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706-656.

[3] HRS § 706-656 provides in pertinent part:

**§706-656 Terms of imprisonment for first and second**
(continued...)

arises from the death of Asa Yamashita (Yamashita) on February 27, 2009. Fauatea was sentenced to life in prison with the possibility of parole.

On appeal, Fauatea asserts the circuit court (1) abused its discretion when the presiding judge refused to recuse himself due to bias and/or prejudice against and towards Fauatea, thereby denying Fauatea a fair trial; (2) erred in its rulings concerning and affecting defense objections to evidentiary matters and the cumulative effect of these erroneous rulings was a denial of a fair trial for Fauatea; and (3) improperly acted as prosecutor, denying Fauatea a fair trial.

For the reasons stated below, we affirm.

## I. **Recusal**

Fauatea contends that the circuit court judge abused his discretion by refusing to recuse himself in violation of the Code of Judicial Conduct. Fauatea asserts that the circuit court demonstrated bias and/or prejudice toward Fauatea through some of the court's questioning of defense witnesses and by evidentiary rulings which were in favor of the Plaintiff-Appellee State of Hawaiʻi (State).

"Decisions on recusal or disqualification present perhaps the ultimate test of judicial discretion and should thus lie undisturbed absent a showing of abuse of that discretion." TSA Int'l Ltd. v. Shimizu Corp., 92 Hawaiʻi 243, 252, 990 P.2d 713, 722 (1999) (block quote format omitted) (quoting State v.

---

[3](...continued)
degree murder and attempted first and second degree murder. . . .

. . . .

(2) Except as provided in section 706-657, pertaining to enhanced sentence for second degree murder, persons convicted of second degree murder and attempted second degree murder shall be sentenced to life imprisonment with possibility of parole. The minimum length of imprisonment shall be determined by the Hawaii paroling authority; provided that persons who are repeat offenders under section 706-606.5 shall serve at least the applicable mandatory minimum term of imprisonment.

<u>Ross</u>, 89 Hawai'i 371, 375, 974 P.2d 11, 15 (1998)). In general under the abuse of discretion standard, "it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." <u>State v. Crisostomo</u>, 94 Hawai'i 282, 287, 12 P.3d 873, 878 (2000) (citations, and internal quotation mark omitted).

In his opening brief, Fauatea relies on <u>State v. Gomes</u>, 93 Hawai'i 13, 995 P.2d 314 (2000), which addressed a judge's obligation to recuse under the guidelines of Canon 3(E)(1) of the Code of Judicial Conduct (Revised) (1992). The similar applicable rule in this case is Rule 2.11(a)(1) of the Hawai'i Revised Code of Judicial Conduct (2009).[4] Rule 2.11(a)(1) provides in pertinent part:

> **Rule 2.11. Disqualification or recusal.**
>
> (a) Subject to the rule of necessity, a judge shall disqualify or recuse himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
>
> (1) The judge has a personal bias or prejudice for or against a party . . . .

Fauatea points to three instances, all occurring during trial on October 11, 2009, which he asserts demonstrate the circuit court's bias and/or prejudice mandating recusal.

During the examination of defense witness Tom Cunningham, Ph.D (Dr. Cunningham), a licensed psychologist, the circuit court posited the following hypothetical question:

> Q. All right, if the evidence supported an inference that the person that was killed in this case, while being a stranger to the defendant, perhaps may have been mistaken by the defendant for someone else with whom he has a beef or a disagreement or some upset with, how, if at all, would you factor that in, or would it be important to know little bit more about that?

---

[4] Fauatea does not rely on HRS § 601-7 (1993 & 2013 Supp.) as a basis for claiming the circuit court judge should have disqualified himself. Indeed, Fauatea never submitted the affidavit required under HRS § 601-7, which would have had to be filed prior to trial. Rather, Fauatea bases his claim of disqualification on the circuit court's actions during the trial.

Fauatea did not object. On appeal, Fauatea asserts that the circuit court's hypothetical had no basis in the facts in evidence at that point in the trial. It also appears that Fauatea asserts that the circuit court, through the question above, introduced a surrogate victim theory into the case after the State had rested.

Next, Fauatea cites the following interaction that occurred during the State's cross-examination of defense witness Martin Blinder, M.D. (Dr. Blinder), a psychiatrist.

> Q. [A stylist at the Supercuts located at the Ewa Town Center] had face-to-face contact with the defendant to the extent where she was able to observe his demeanor and even testified that she thought he was under -- or seemed to be on something and was just staring at her, okay. That's the testimony. . . . But he was, based on the testimony, staring at this stylist, and she used the word scared. In what context, it wasn't clear, but she used the word scared.

> Now, at a later point in time, the defendant again entered the Supercuts and was escorted out because he had no legitimate business there and tried to get back in the store but was refused reentry. That was maybe two months prior to the stabbing.

> A. Two months?

> Q. Two months. And the stylist that the defendant had this affection for --

> [Defense Counsel]: I'm going to object to that because that is not a fair and accurate representation of the testimony. It assumes facts not in evidence. There was no testimony whatsoever about any affection between a stylist and Mr. Fauatea. The record is absolutely devoid of that, Your Honor.

> THE COURT: To the extent that that is clear, there has been no testimony as far as any affection. However, to the extent that that's an inference that could possibly be drawn from the evidence that's in the record, I will permit the question with that caveat.

On appeal, Fauatea asserts the circuit court's ruling was problematic because the evidentiary record is completely and entirely devoid of any testimony that would permit an inference that Fauatea had a romantic interest in any person. Fauatea argues the circuit court's prejudicial attitude toward Fauatea, which lead to the above ruling, allowed the State to pursue the surrogate victim theory which it had not introduced.

Lastly, Fauatea cites the following question from the State's cross-examination of Dr. Cunningham which the circuit court permitted over Fauatea's objection:

Q. And he was looking at a display of knives in that store. He selected a knife and took that knife in its wrapping to the cashier, put money on the counter, and attempted to walk out of the store. The cashier called the defendant back saying that she needed to scan the item. The defendant came back into the store, stood in line. There was approximately four people in front of him, and he waited his turn. When his turn came to pay for the item, he did that by putting down more than what the item was worth, not a lot more, but in this case, the item was $6.17 with tax. He put down seven dollars. He did not wait for his change. He did not allow the cashier to bag the item. He just walked out after he paid for it.

Then he proceeded to an area near the Supercuts -- and let me show you State's exhibit number 2 in evidence just so that you have a visual of this. Longs Drugs is located on the far right of this diagram -- excuse me, photo, State's 2, which is pretty much out of sight. Defendant left the Longs Drugs, turned to his right, passed a Foodland which I'm indicating at the edge of State's exhibit 2, the right edge, walked down the walkway toward Supercuts which I'm pointing at, and it's sort of like in line with this white van in State's 2.

[Defense counsel]: Excuse me. Objection, Your Honor. Is there going to be a question at any point here?

[Deputy Prosecuting Attorney (DPA)]: There will be.

[Defense counsel]: This is a pretty long narrative. I understand it's a bench trial but --

THE COURT: Well, basically, I'll overrule it to the extent that it's information -- well, I'm going to overrule the objection. Go ahead.

[DPA]: Thank you.

Q [DPA]: Defendant continued walking past the Lovely Nails and ended up by the seed store by a rubbish can. Now, the defendant has also -- there's testimony that the defendant also stood by the rubbish can, unwrapped the knife, and threw the wrapper in the rubbish can. He also had interaction with a male by saying hi to the male, and the male responded saying hi to him. Defendant then -- he was witnessed to grab the so-called victim's arm, who was seated on a bench right outside the -- or near the Ewa seed store, and began stabbing her.

Now, that behavior from the time he was in Longs till the stabbing, would that be considered organized behavior?

On appeal, Fauatea asserts the circuit court's ruling allowed the State to testify at length about the facts instead of requiring

the State to follow established procedures for admitting evidence, and thus the ruling demonstrates the court's bias and prejudice.

Several days later, on October 15, 2009, Fauatea orally moved for either a mistrial or for the court to recuse itself.[5] In his argument before the circuit court, Fauatea's only basis for his motion for recusal was the circuit court's ruling on the State's question to Dr. Blinder, which allowed the State's question to the extent that an inference could possibly be drawn from the evidence that Fauatea had an "affection" for a stylist at Supercuts.

Fauatea did not raise the circuit court's hypothetical question to Dr. Cunningham or the State's question to Dr. Cunningham as a basis for his motion for recusal.[6]  These

---

[5]  Other than his contention that the circuit court judge should have recused, Fauatea does not assign error to the circuit court's denial of his motion for a mistrial.

[6]  While the broader issue of judicial questioning of witnesses was not specifically raised as a basis for Fauatea's motion for a mistrial and/or motion for recusal, the circuit court stated the following in denying the motion:

> As to your request for the Court to recuse itself, please make no -- you should not be under the assumption simply because the Court poses questions -- and I posed a number of different questions of these various experts in particular because I'm going to have to decide the facts of this case and whether or not, not only has the State proven the case beyond a reasonable doubt, but whether or not you met your burden as far as the affirmative defense of lack of penal responsibility in Mr. Fauatea's case.
> I have reviewed the documents that are in evidence, did so in preparation for the testimony of the witnesses, and I asked those questions that the Court felt would be helpful in arriving at appropriate assessments and judgments, but there's nothing about the Court's questioning or the Court's ruling on any of these issues that should be taken to suggest or, in fact, indicates that the Court is predisposed to rule one way or the other, [defense counsel], and I wanted to say that I'm sorry if you have that misimpression, but certainly it's not the Court's intention to do that.
> . . . .
> The sum total of that is that [Dr. Blinder] was quite clear about what his basis is, and that's what I hoped to gather through the examination, at least the Court's examination of these witnesses.

arguments are thus waived. State v. Moses, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal[.]"); see State v. Ildefonso, 72 Haw. 573, 584, 827 P.2d 648, 655 (1992).

In terms of the one argument preserved by Fauatea, the circuit court sustained in part Fauatea's objection to the State's question of Dr. Blinder, noting that Fauatea's alleged affection for a Supercuts stylist was only a possible inference from the evidence, not an established fact. Based on our review of the record, the circuit court's ruling had some grounding in the evidence and does not indicate bias or prejudice.[7] Also, contrary to Fauatea's assertion, the State had introduced the surrogate victim theory by discussing Fauatea's interaction with the stylist during its opening statement and by the questioning of certain witnesses prior to Dr. Blinder's testimony. "[T]he test for disqualification due to the 'appearance of impropriety' is an objective one, based not on the beliefs of the petitioner or the judge, but on the assessment of a reasonable impartial onlooker apprised of all the facts." Ross, 89 Hawaiʻi at 380, 974 P.2d at 20. Given our review of the record, the circuit court did not abuse its discretion in denying Fauatea's oral motion to recuse based on bias and/or prejudice.

Fauatea also appears to argue that this court should recognize plain error due to the circuit court's failure to recuse. "This court does not recognize plain error unless the defendant's substantial rights have been affected." Gomes, 93

---

[7] Prior to Dr. Blinder's testimony, Dr. Cunningham testified that he had reviewed records regarding Fauatea which demonstrated sexually inappropriate behavior toward various females, including behavior characterized as harassment. Moreover, the stylist employed at Supercuts, which is located very near to where the stabbing occurred, testified that prior to the incident she had cut the hair of someone who looked like Fauatea and the person looked drunk or lost, that on a later occasion the person came into Supercuts and she went out to call security to have him leave, and that she sometimes sat on the bench by the Lovely Nails salon to eat on her breaks (similar to where Yamashita was at the time of the stabbing). The stylist also testified she was four feet, eleven inches tall and Asian, while other evidence established that Yamashita was four feet, ten inches tall and Asian.

Hawai'i at 19, 995 P.2d at 320. Fauatea essentially contends that the circuit court's rulings gave the appearance of impropriety such that the court's impartiality might reasonably be questioned. However, an appearance of impropriety does not establish that the substantial rights of a party have been affected for purposes of plain error review. Id.

The record does not demonstrate that the circuit court judge behaved or acted in a biased or improper manner toward Fauatea, and given the evidence in the record, the judge's denial of Fauatea's recusal motion did not affect Fauatea's substantial rights for purposes of plain error review.

## II. **Evidentiary Rulings**

Fauatea contends the circuit court erred in two of its evidentiary rulings, the cumulative effect of which denied him a fair trial.

First, during the State's direct examination of Laverne Livernoche (Livernoche), an eye witness who followed Fauatea as he left the scene, the following exchange occurred:

> Q. So what, if anything, did you do when you were outside?
>
> A. When we were standing outside, someone behind me said look, look, there he is, he's walking away. And I said who? And I asked that guy with the black shorts and no shirt? Like yeah, yeah, he's just leaving.
>
> [Defense counsel]: Objection, Your Honor. It's nonresponsive.
>
> THE COURT: Overruled.

Fauatea contends the circuit court's failure to strike the witness's answer demonstrates the circuit court's "nonchalant attitude towards the rules of evidence[,]" demonstrates the circuit court's bias against Fauatea, and deprived Fauatea of a fair trial.

Next, Fauatea asserts that the State was improperly permitted to admit hearsay evidence during direct examination of Officer Keng-Chuan Wu (Officer Wu), the arresting officer in this matter.

Q. [DPA] As you approached the male with your weapon drawn and the defendant apparently -- well, complied with your commands and putting his hands behind his head, what, if anything, occurred next?

A. He then uttered --

[Defense counsel]: Objection. It's going to call for hearsay, judge.

THE COURT: All right, overruled.

Q. [DPA] Go ahead.

A. Oh, he uttered that he didn't have anything on him and that he had dumped the knife.

Fauatea argues that the circuit court's failure to require the State to provide an exception to the hearsay rule demonstrated bias and, in concert with the other cited evidentiary ruling, deprived Fauatea of a fair trial.

The appellate court applies "two different standards of review in addressing evidentiary issues. Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case review is under the right/wrong standard." State v. Ortiz, 91 Hawai'i 181, 189, 981 P.2d 1127, 1135 (1999) (citations and internal quotation marks omitted). On the one hand, "[a] trial court's decision to admit testimony over an objection based on nonresponsiveness requires a judgment call and is reviewed for abuse of discretion." State v. Kassebeer, 118 Hawai'i 493, 517, 193 P.3d 409, 433 (2008) (internal quotation marks omitted). On the other hand, "[w]here the admissibility of evidence is determined by application of the hearsay rules, the appropriate standard of review is the right/wrong standard." State v. Haili, 103 Hawai'i 89, 99, 79 P.3d 1263, 1273 (2003).

With regard to Livernoche's testimony, there is no merit to Fauatea's contention that her answer was non-responsive to the question. Upon being asked what she did when she was outside, Livernoche testified regarding a brief interaction with someone else in the crowd that drew her attention to Fauatea.

Additionally, even if we agreed that Livernoche's answer was unresponsive, the circuit court did not err. "[R]esponsiveness is not the ultimate test of admissibility and . . . if an unresponsive answer contains pertinent facts, it is nonetheless admissible; it is only when the unresponsive answer produces irrelevant, incompetent or otherwise inadmissible information that it should be stricken." Kassebeer, 118 Hawaiʻi at 517, 193 P.3d at 433 (citation, internal quotation marks, and brackets omitted). Here, Livernoche's answer explained why her attention was drawn to Fauatea and the basis for why she subsequently followed Fauatea as he left the scene, called 911, took his photo with her cell phone, and watched Fauatea until Officer Wu arrived. Fauatea does not assert Livernoche's answer is otherwise inadmissible. Livernoche's answer was not irrelevant or incompetent. Therefore, even if Livernoche's answer was unresponsive, the circuit court did not abuse its discretion in allowing it.

With regard to Office Wu's testimony, Fauatea argues that his statement to Officer Wu that he had dumped the knife was clearly inadmissible hearsay and that the circuit court suspended the rules of evidence by failing to ask the State to provide a non-hearsay basis before admitting the testimony.

The State argues that Fauatea's statement was not hearsay because it was not offered for the truth of the matter asserted. The State contends that there was other ample evidence to establish that Fauatea had discarded the knife in some bushes, and that the implicit purpose of Officer Wu's testimony was to show Fauatea had the capacity to appreciate the wrongfulness of his conduct and that he possibly understood that if he did not inform Officer Wu he was unarmed he might be injured in the process of being arrested, again showing he had the capacity to appreciate the circumstances. The State's argument has merit given Fauatea's assertion that he was not guilty by reason of insanity.

Moreover, even assuming Fauatea's statement to Officer Wu was hearsay, it was admissible as an admission by a party-opponent. Rule 803(a)(1) of the Hawaii Rules of Evidence (HRE) provides that party admissions are not excluded by the hearsay rule. "The extrajudicial statements of a party-opponent, when offered against the same, are universally deemed admissible at trial as substantive evidence of the fact or facts stated." State v. Lealao, 126 Hawai'i 460, 471, 272 P.3d 1227, 1238 (2012) (citation omitted). "[A]ny statement made by a party to an action, and which reasonably tends to prove or disprove a material fact in the case, is competent to be put in evidence against him in the trial of that action[.]" HRE Rule 803 cmt. (quoting Bonacon v. Wax, 37 Haw. 57, 61 (Haw. Terr. 1945)). Fauatea's unsolicited statement to Officer Wu was thus admissible as an admission by a party-opponent.

The circuit court did not err in allowing the testimony from Livernoche or Officer Wu that Fauatea challenges on appeal.

### III.  Circuit Court's Questioning of Witnesses

Fauatea contends the circuit court assumed the role of the prosecutor due to the extensive nature of its questioning of witnesses so as to deprive Fauatea of a fair trial. Fauatea cites to no place in the record where he objected to the circuit court's questioning of witnesses during the bench trial. Fauatea asserts that this court should review for plain error and that the error was not harmless, citing State v. Silva, 78 Hawai'i 115, 890 P.2d 702 (App. 1995), abrogated on other grounds by Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995).

"Normally, an issue not preserved at trial is deemed to be waived. But where plain errors were committed and substantial rights were affected thereby, the errors may be noticed although they were not brought to the attention of the trial court." State v. Fagaragan, 115 Hawai'i 364, 367-68, 167 P.3d 739, 742-43 (App. 2007) (citations, internal quotation marks, and brackets omitted). The appellate court "will apply the plain error standard of review to correct errors which

seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." State v. Nichols, 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006) (citation omitted) (block quote format omitted). An appellate court's "power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system--that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes." Id. at 335, 141 P.3d at 982 (citation omitted) (block quote format omitted).

Fauatea contends that the circuit court's extensive questions were more focused and thorough than the State's questions, and "typically identified with the prosecution." Fauatea argues that when a court assumes the role of the prosecutor, the violation of fundamental due process is inherently prejudicial. However, Fauatea cites no specific examples of questions that are problematic. Instead, Fauatea simply points to the circuit court's examination of Dr. Cunningham, Dr. Blinder, Dr. Lyle Herman, Dr. Stephen Gainsley, and Dr. Richard Kappenberg as problematic based entirely on the number of transcript pages covered by the circuit court's questions.[8] Notably, the court's questioning of witnesses that Fauatea challenges on appeal is of medical experts.

At trial, Fauatea placed his mental status in question by requesting the court find him not guilty by reason of insanity. The "claim of lack of penal responsibility is an affirmative defense for which [the defendant has] the burden of proof[.]" State v. Plichta, 116 Hawai'i 200, 207, 172 P.3d 512, 519 (2007). The Hawai'i Supreme Court has said that

_____

[8] The circuit court questioning of Dr. Cunningham covered parts of 22 pages of transcript, of Dr. Blinder, parts of 22 pages, of Dr. Herman, parts of 12 pages, of Dr. Gainsley, parts of 13 pages, and of Dr. Kappenberg, parts of 15 pages.

12

> although a trial court may within its discretion ask questions of the witnesses, the trial judge should not cross-examine a witness so extensively as to give rise to jury bias. When the court assumes the role of a prosecutor, it violates the fundamental due process requirement that the tribunal be impartial. However, a trial judge is accorded considerably greater discretion in the questioning of witnesses in jury waived trials because in such cases, it is the judge who is the trier of fact and there is no possibility of jury bias. Hence, in bench trials such as in this case, the judge's duty to clarify testimony and fully develop the truth in the case becomes particularly heightened.

State v. Ngo, 129 Hawai'i 30, 44, 292 P.3d 1260, 1274 (2013) (citations, internal quotation marks, and brackets omitted). While "a trial judge must not assume the role of an advocate for either party[,]" State v. Pegouskie, 107 Hawai'i 360, 367, 113 P.3d 811, 818 (App. 2005), here, the circuit court's questioning of the medical experts served to clarify and fully develop the truth as to the evidence regarding a vital issue in the case, *i.e.*, whether Fauatea had penal responsibility for the murder of Yamashita. See Ngo, 129 Hawai'i at 44, 292 P.3d at 1274. Therefore, there was no plain error by the circuit court.

## IV. Conclusion

Based on the above, we affirm the Judgment of Conviction and Sentence filed on June 26, 2013, in the Circuit Court of the First Circuit.

DATED: Honolulu, Hawai'i, July 31, 2014.

On the briefs:

Barry L. Sooalo
for Defendant-Appellant

Brian R. Vincent
Deputy Prosecuting Attorney
City and County of Honolulu
For Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge

13